Michael G. Helms – 014470
**THE HELMS LAW FIRM, P.L.C.**
2600 North Central Avenue, Suite 940
Phoenix, Arizona 85004
Telephone: (602) 358-2060
Fax: (602) 358-2055

Attorneys for Best Western International, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation,<br><br>Plaintiff<br><br>vs.<br><br>Horizon Hospitality, L.L.C., an Alabama limited liability company; and Vijay Patel, an individual,<br><br>Defendants. | No.<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Best Western International, Inc. ("Best Western"), for its Complaint against defendants Horizon Hospitality, L.L.C., an Alabama limited liability company; and Vijay Patel, an individual, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for breach of contract, federal trademark infringement, and unfair competition under the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §§ 1051 et seq.), and related common law and statutory causes of action arising from defendants' refusal to cease and desist their unauthorized use of Best Western's trade name, trademarks, service marks, logos, and other similar identifying symbols (the "Best Western Marks") in violation of Best Western's federal and common law trademark rights.

2. Defendants have also failed to pay amounts owing to Best Western, in violation of common law and in breach of contract.

## THE PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Best Western International, Inc. ("Best Western") is a non-profit corporation organized under the laws of the State of Arizona with its headquarters located in Phoenix, Arizona.

4. Upon information and belief, defendant Horizon Hospitality, L.L.C., ("Horizon") is an Alabama limited liability company with its principal place of business in the State of Alabama.

5. Upon information and belief, defendant Vijay Patel is a resident of the State of Alabama.

6. This Court has jurisdiction over the Lanham Act claim set forth below by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§1331 and 1338(a), and over the other claims set forth below by virtue of 28 U.S.C. §§1332, 1367 and/or 1338(b).

7. Venue in this judicial district and the exercise of personal jurisdiction over the defendants by this Court are proper pursuant to 28 U.S.C. § 1392(b) and (c) and because, among other reasons: (i) defendants have contractually agreed to litigate all disputes with Best Western arising from or related to the Best Western Membership Application and Agreement executed by defendants prior to December 20, 2006, or any relationship between the parties, in Arizona state or federal court; (ii) defendants have caused events to occur, and injuries to result, in the State of Arizona; and (iii) defendants aimed their conduct at Best Western, knowing that Best Western is located in Arizona, and harming Best Western in Arizona.

## GENERAL ALLEGATIONS

8. Best Western operates as a membership organization consisting of

individually owned and operated hotels (i.e., its members). The rights and obligations of Best Western's members are determined by the membership and are set forth in the Membership Agreement and in Best Western's Bylaws. Additionally, Best Western's members have adopted Best Western's Rules and Regulations (the "Rules and Regulations").

9. Best Western provides its members with a worldwide reservation system and worldwide marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings and supplies (the "Best Western Services"). Best Western employs a large number of employees worldwide who are dedicated to providing member hotels with the Best Western Services.

10. Each Best Western member is authorized to use the Best Western Marks in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement. See Membership Agreement at ¶¶ 19-26.

11. In exchange for receiving the Best Western Services and the Best Western License, Best Western members are obligated to, among other things, pay membership fees and other assessments.

12. Best Western first adopted "Best Western" as its trade name in 1947. Shortly thereafter, Best Western adopted and began using "Best Western" as a trademark identifying hotel services provided by member hotels that were affiliated with Best Western. Best Western has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947. As a result of this extensive promotion, the trade name and trademark have become famous among consumers as a source-identifying symbol.

13. Since 1947, Best Western has registered with the United States Patent and Trademark Office ("USPTO") various trademarks, service marks and collective

membership marks. On April 14, 1959, the Best Western logo was first registered as a service mark by the USPTO under Registration No. 677,103. Best Western has developed the Best Western Marks at great expense over the past decades.

    14.    Best Western owns the following registrations for Best Western Marks and the marks referenced in these registrations:

    (a)    a Best Western logo was registered as a service mark by the USPTO on April 14, 1959, under Registration No. 677,103;

    (b)    a Best Western logo was registered as a collective membership mark by the USPTO on October 27, 1959, under Registration No. 687,405;

    (c)    a Best Western logo was registered as a collective membership mark by the USPTO on May 5, 1964, under Registration No. 769,314;

    (d)    a Best Western logo was registered as a service mark by the USPTO on May 14, 1968, as Registration No. 849,155;

    (e)    a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,616;

    (f)    a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,617;

    (g)    a Best Western logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,812;

    (h)    a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,813;

    (i)    a Best Western logo was registered as a service mark by the USPTO on August 30, 1977, under Registration No. 1,072,360;

    (j)    a Best Western logo was registered as a collective membership mark by the USPTO on September 27, 1077, under Registration No. 1,074,300;

(k)  a Best Western logo was registered as a service mark by the USPTO on June 11, 1985, under Registration No. 1,341,611;

(l)  the Best Western word mark was registered by the USPTO as a service mark on February 3, 1987, under Registration No. 1,427,735;

(m)  the Best Western word mark was registered by the USPTO as a service mark on February 3, 1987, under Registration No. 1,432,431;

(n)  the Best Western crown logo design was registered by the USPTO as a service mark on December 8, 1988, under Registration No. 1,515,712;

(o)  Best Western's current logo was registered by the USPTO as a trademark on June 20, 1995, under Registration No. 1,900,620;

(p)  Best Western's current logo was registered by the USPTO as a service mark on November 7, 1995, as Registration No. 1,933,830;

(q)  Best Western's current logo was registered by the USPTO as a service mark on November 25, 1997, as Registration No. 2,116,079;

(r)  Best Western's current logo was registered by the USPTO as a service mark on October 14, 1997, as Registration No. 2,105,546;

(s)  Best Western's current logo was registered by the USPTO as a service mark on March 3, 1998, as Registration No. 2,140,332;

(t)  Best Western has registered a variety of other designs and phrases as service marks in connection with the trade of hotel and motel lodging.

15. Many of the registrations described above are currently in full force and effect, unrevoked and uncancelled. Several of the above listed federal registrations for the Best Western word mark and logo have become incontestable under 15 U.S.C. §1065.

16. The Best Western marks are inherently distinctive and possess strong secondary meaning.

17. The Membership Agreement and the Rules and Regulations establish the minimum standard scores that each member must meet in order to achieve and maintain membership. As a result, consumers worldwide associate the Best Western Marks with high quality in the hotel/motel industry.

18. A key element of Best Western's branding effort is the display of the Best Western Marks on the premises of member hotels through signs, publications, and other public displays.

19. Within 15 days following the termination of membership, the former member must cease and desist from using, and remove from public view, all Best Western Marks and all references to Best Western. The former member is also required to cease and desist from using any item that is similar to the Best Western Marks in spelling, sound, appearance, or in any other manner.

### DEFENDANTS' BEST WESTERN MEMBERSHIP

20. Prior to December 20, 2006, defendants executed a Membership Agreement for the purpose of affiliating their hotel property known as the Birmingham Airport Hotel located in or near Birmingham, Alabama, with Best Western. On December 20, 2006, Best Western conditionally approved said Agreement. Defendants' membership was made subject to the terms and conditions contained in the Terms of Approval letter of December 20, 2006. Upon Best Western's conditional approval of Defendants' Membership Agreement, defendant Vijay Patel became a Best Western member, defendants' hotel became affiliated with Best Western, and the Membership Agreement and Terms of Approval letter became the contract controlling the relationship between defendants and Best Western.

21. The defendants agreed to pay timely all fees, dues, charges, and assessments imposed generally on the membership by the Board of Best Western and to promptly pay

the costs of all goods and services provided by or ordered through Best Western. Additionally, they further agreed that past due amounts would bear interest at the rate of one and one-half percent (1.5%) per month from the date due until paid, provided that such interest charge would in no way authorize or excuse late payments or limit Best Western's rights and remedies against them.

22. Defendants owned and operated the hotel known as the Birmingham Airpost Hotel located in or near Birmingham, Alabama (the "Hotel").

23. Pursuant to paragraph 20 of the Membership Agreement, Best Western granted to defendants the Best Western License, thereby allowing defendants to use the Best Western Marks in connection with the Hotel, subject to the terms of the Best Western License, and only for the term of the Best Western License.

24. Defendants agreed that termination of the Best Western Membership would result in termination of the Best Western License. Defendants agreed to "remove from public view and cease using" all Best Western Marks and all other references to Best Western, and to remove any device or design containing any part of any Best Western Symbol, within 15 days of the date of termination.

25. Defendants also agreed that, upon termination of the Best Western License, they would "actively take steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol."

26. On or about February 20, 2008, Best Western terminated defendants' Best Western membership for failure to maintain minimum quality standards at the Hotel and failure to comply with the Terms of Approval letter, Best Western Articles and Bylaws, and Best Western Rules and Regulations. Pursuant to such termination, Best Western advised that Defendants needed to discontinue use of the Best Western Marks.

## DEFENDANTS' INTENTIONAL AND UNLAWFUL USE OF THE BEST WESTERN MARKS

27. In the ordinary course of its business, Best Western sent its representative to the Hotel on or about March 13, 2008, and April 30, 2008, and May 17, 2008. As part of his duties, such representative took photographs of signs and/or collateral items displayed in connection with the Hotel. These photographs show that, notwithstanding Best Western's requests, defendants had failed to remove the signs and/or collateral items containing the Best Western Marks in connection with the Hotel.

28. Upon information and belief, defendants continue to use – intentionally and unlawfully – the Best Western Marks in connection with the Hotel.

29. Defendants' intentional and unlawful use of the Best Western Marks in connection with the Hotel is likely to confuse the public and cause members of the public to stay at the Hotel in the mistaken belief that the Hotel is a Best Western hotel. Defendants' misconduct is also likely to divert to defendants the benefit of and/or damage the reputation and goodwill that Best Western has built throughout the years.

## DEFENDANTS' REFUSAL TO PAY AMOUNTS OWING TO BEST WESTERN

30. Best Western has fully performed all of its obligations under the Membership Agreement.

31. On April 14, 2008, Best Western requested that the defendants pay all outstanding amounts due and owing to Best Western. As of May 1, 2008, the amount due and owing to Best Western by defendants was at least $115,780.91, representing certain fees, dues, charges and costs imposed on the membership, excluding interest.

32. Defendants have refused, and continue to refuse, to pay to Best Western the amounts due and owing.

## COUNT I – BREACH OF CONTRACT

33. Best Western incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34. The Defendants have breached the Membership Agreement by failing to pay to Best Western the amounts due and owing as required by the Membership Agreement.

35. Pursuant to the terms of the Membership Agreement, interest has accrued and continues to accrue on the unpaid amounts at the rate of one and one-half percent (1.5%) per month.

36. As of May 1, 2008, the total amount owing to Best Western was $115,780.91.

37. Pursuant to paragraph 36 of the Membership Agreement and A.R.S. § 12-341.01, Best Western is entitled to recover attorney's fees and costs incurred in pursuing this action.

## COUNT II – OPEN ACCOUNT

38. Best Western incorporates by reference the allegations contained in paragraphs 1 through 37 above as though fully set forth herein.

39. At the request of the defendants, Best Western has rendered services and provided supplies on an open account, and defendants agreed to pay for such services and supplies when due in accordance with the Membership Agreement.

40. Defendants have failed to pay for the services and supplies that Best Western has provided. As of May 1, 2008, there was due and owing on an open account for unpaid fees and interest the sum of $115,780.91.

41. Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue at the rate of one and one-half percent (1.5%) per month until paid in full.

42. Pursuant to paragraph 36 of the Membership Agreement and A.R.S. § 12-

341.01, Best Western is entitled to recover attorney's fees and costs incurred in pursuing this action.

### COUNT III – BREACH OF CONTRACT – POST TERMINATION USE OF TRADEMARKS

43. Best Western incorporates by reference the allegations contained in paragraphs 1 through 42 above as though fully set forth herein.

44. Pursuant to the express terms of the Membership Agreement, the defendants were obligated to remove from public view, and cease all use of, the Best Western Marks in connection with the Hotel, and any device or design containing any part of any Best Western Symbol, within 15 days after termination of their membership. This prohibition included making any representation, whether direct or indirect, indicating that the Hotel is affiliated with Best Western.

45. Despite Best Western's demand that defendants discontinue their use of the Best Western Marks in connection with the Hotel, defendants have used and continue to use the Best Western Marks, or portions of them, in connection with the Hotel.

46. The Membership Agreement provides for liquidated damages where, as here, defendants continue to use the Best Western Marks in connection with the Hotel for more than 15 days following the termination of their Best Western membership and the Best Western License. The amount of liquidated damages is equal to fifteen percent (15%) of the mean of the Hotel's room rates per day multiplied by the total number of rooms for every day that defendants continue to use the Best Western Marks beyond the 15 day period. As of May 17, 2008, the amount of liquidated damages due and owing to Best Western by defendants was, upon information and belief, $239,085.00. Such liquidated damages continue to accrue at the rate of $3,415.50 per day.

47. Pursuant to paragraph 36 of the Membership Agreement and A.R.S. § 12-

341.01, Best Western is entitled to recover attorney's fees and costs incurred in pursuing this action.

### COUNT IV – FEDERAL TRADEMARK INFRINGEMENT
### (LANHAM ACT § 32(l), 15 U.S.C. § 1114(l))

48. Best Western incorporates by reference the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

49. Despite written demand by Best Western, defendants refuse to cease and desist from the use of the Best Western Marks in connection with the Hotel.

50. Defendants continue to hold out the Hotel to the public as a Best Western member, despite the fact that an affiliation no longer exists between them and Best Western.

51. Defendants' unauthorized use of the Best Western Marks likely caused the public to believe, erroneously, that the Hotel was, in fact, a Best Western. Also, it likely diverted to the defendants the benefit of the reputation and goodwill associated with Best Western's name and/or damaged the reputation and goodwill associated with Best Western's name.

52. Defendants' actions complained of herein were at all times without Best Western's consent. Defendants' actions constitute infringement of the Best Western Marks in violation of § 32(l) of the Lanham Act, 15 U.S.C. § 1114(l), and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53. Defendants' infringement was willful. Accordingly, Best Western is entitled to recover all damages sustained as a result of defendants' unlawful conduct, including three times defendants' profits and Best Western's damages, as well as the costs of this suit and attorney's fees, pursuant to 15 U.S.C. § 1117.